| | |
|---|---|
| AMERICAN STEINWINTER INVESTOR GROUP, FOR & ON BEHALF OF AMERICAN STEINWINTER, INC., | ) ) ) ) ) |
| Plaintiffs/Appellees, | ) ) |
| VS. | ) ) |
| AMERICAN STEINWINTER, INC., | ) ) |
| VS. | ) ) |
| SALVATORE STALLONE and CLAIRE POPPLER, | ) ) ) |
| Defendants/Appellants, | ) ) |
| WALTER C. PRESSLEY, | ) ) |
| Plaintiff/Counter-Defendant/ Appellant. | ) ) |

Davidson Chancery
Nos. 93-3431-III
94-1552-III
Consolidated Cases

Appeal No.
01A01-9607-CH-00350

FILED

May 28, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

HONORABLE ROBERT S. BRANDT, CHANCELLOR

Roland M. Lowell #3874
2300 First American Center
Nashville, TN 37238-2075
ATTORNEY FOR PLAINTIFFS/APPELLEES

David Weed
Suite 2900, Third Natl. Financial Cntr.
424 Church Street
Nashville, TN 37219

Keith Jordan
222 Second Avenue No., Ste. 360M
Nashville, TN 37201
ATTORNEYS FOR
RECEIVER/APPELLEE

William W. Burton #3237
Daniel, Burton & Associates
401 W. Main, P.O. Box 960
Murfreesboro, TN 37133-0960
ATTORNEY FOR DEFENDANTS/APPELLANTS
Salvatore Stallone and Claire Poppler

Walter C. Pressley
1219 Franklin Road
Brentwood, TN 37024
CROSS-PLAINTIFF/COUNTER
DEFENDANT/APPELLANT/PRO SE

**AFFIRMED AND REMANDED.**

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

| | |
|---|---|
| AMERICAN STEINWINTER INVESTOR GROUP, FOR & ON BEHALF OF AMERICAN STEINWINTER, INC., | ) ) ) ) ) |
| Plaintiffs/Appellees, | ) Davidson Chancery ) Nos.  93-3431-III |
| VS. | ) 94-1552-III ) Consolidated Cases |
| AMERICAN STEINWINTER, INC., | ) ) Appeal No. |
| VS. | ) 01A01-9607-CH-00350 ) |
| SALVATORE STALLONE and CLAIRE POPPLER, | ) ) ) |
| Defendants/Appellants, | ) ) |
| WALTER C. PRESSLEY, | ) ) |
| Plaintiff/Counter-Defendant/ Appellant. | ) ) |

# O P I N I O N

This appeal presents a most complicated and factually disputed series of dealings involving numerous parties.

The briefs, with contradictions present the background of the controversy as follows:

Salvatore Stallone was the principal in a Utah Corporation, originally named Bronco T. Mining, Inc., but subsequently and successively named Stallone American, Limited, Stallone McComb, Incorporated, and finally, American Steinwinter, Inc.  The last name was adopted to pursue a venture involving the marketing of a novel truck designed by a German firm named Steinwinter International.  Neither Steinwinter, International, nor American Steinwinter, Inc., were made parties to this suit, but the assets of American Steinwinter, Inc., were attached and are being liquidated by a receiver appointed in these proceedings.

A considerable number of people were induced to invest in stock of American Steinwinter, Inc. or other entities which claimed an interest in American Steinwinter, Inc., and some of them initiated this proceeding.

## TRIAL COURT
### Case No. 93-3431-III

Initially, a group of investors named Benjamin O. Williams, David W. Riddle, Mitchell Breedlove, Gregory V. Watson, Scott Ervin and Gerald M. Ware, used a pseudonym, "American Steinwinter Investor Group," in a quasi stockholders derivative suit for and on behalf of American Steinwinter, Inc.," a Utah Corporation with a Nashville, Tennessee address.

As thus designated, the plaintiffs sued, 1. Salvatore Stallone; 2. Claire Poppler; 3. James Colin Taylor; 4. Sherry L. Stallone; 5. Sherry Martin; 6. Jesse James Douglas; 7. Hollow Buzzard Lick Farm; 7. J. Edward Winstead; 8. Winner Motor Carriage Corporation of Nevada, Diversified; 9. Retail, Incorporated; 10. Diversified Securities, Incorporated; 11. Minestar, Incorporated; 12. Stallone Holding, Incorporated, 13. Stallone International Properties; 14. The Pitching Post Music Group; 15. American Steinwinter Truck Manufacturing, Incorporated; 16. Stallone Companies of Nevada, and unknown defendants; 17. X Y Z Corporation and, 18. John Doe,. Also named as a defendant was 19. Steinwinter Model Truck.

The foregoing plaintiffs and defendants formed case no. 93, 3431-III in the Trial Court. On December 17, 1993, the Trial Court appointed David S. Weed receiver of American Steinwinter, Inc.

## TRIAL COURT
### Case No. 94-1542-III

On May 23, 1994, Walter Pressley filed a petition against David Weed, Receiver for American Steinwinter, Inc., under the above Trial Court number, claiming an interest in or title to a certain truck and seeking to restrain the seizure of the truck by the receiver.

On June 27, 1994, the Trial Court entered an order consolidating Trial Court cases 93-3431-III (the original suit of *Williams, et al., v. Stallone, et al.*, including the receivership) and Case No. 94-1542-III. (The petition for stay regarding the truck.)

**Further Proceedings in Consolidated Cases**

On July 26, 1994, the original plaintiffs filed claims and counter-claims against petitioner, Pressley.

On August 24, 1994, the Trial Court granted default judgment in favor of the original plaintiffs and against original defendant Stallone, reserving the amount of damages.

On September 23, 1994, the Trial Judge granted summary judgment denying Pressley's claims to the truck and requiring him to surrender it and all other receivership property to the receiver.

On November 30, 1994, "Plaintiff" moved for summary judgment against Claire Poppler. It does not appear that a memorandum or evidence was filed with said motion.

On February 27, 1995, the Trial Court entered summary judgment against Claire Poppler in favor of original plaintiffs, reserving the amount of damages.

On April 9, 1996, the Trial Court entered judgment in favor of "Plaintiff" against Poppler and Stallone under the Consumer Protection Act for $1,681,503.00. No issues remained unresolved in respect to the remaining defendants in Trial Court case no. 93-3431-III.

-4-

On April 30, 1996, the Trial Court overruled the motion of Stallone and Poppler for a new trial.

On May 28, 1996, the Trial Court entered final judgment against Pressley for $560,501.21, compensatory damages trebled under the Consumer Protection Act.

On May 29, 1996, Claire Poppler, Salvatore Stallone, American Steinwinter, Truck Manufacturing Company and other companies owned by Salvatore Stallone, filed notice of appeal. Appeal bond was executed only by Salvatore Stallone and Claire Poppler as principals.

On June 26, 1996, "Defendants" filed a "Notice of Request to Make Part of Record for Appeal."

On the same date "Defendants" filed a "Notice of Request to Not Make Part of Record for Appeal."

On June 28, 1996, Pressley filed a notice of appeal from the final judgment rendered against him on May 28, 1996.

It appears from the above that Case No. 93-3431-III was terminated by final judgment against Stallone and Poppler; and Case No. 94-1542 was terminated on May 28, 1996, by final judgment against Pressley; so that final judgment in the consolidated cases occurred on May 28, 1996. See TRCP Rule 54.02. As hereafter explained, the fact that the receivership has not been terminated does not delay the finality of the judgments mentioned above because the receivership should be treated as a separate proceeding.

Pressley's notice of appeal was filed on June 28, 1996, more than 30 days after entry of final judgment on May 28, 1996. June 27, 1996, occurred on a Thursday, so that no extension

of the 30 days for filing notice resulted from the occurrence of June 27, 1996 on a Saturday or

Sunday as provided in TRAP Rule 4. The 30-day rule for notices of appeal is mandatory and

jurisdictional and may not be waived TRAP Rule 2, *Jefferson v. Pneumo Service Corporation,*

Tenn. App. 1985, 699 S.W.2d 181*; John Barb, v. Underwriters at Lloyds of London*, Tenn. App.

1983, 653 S.W.2d 422.

The appeal of Walter Pressley is not properly before this Court and must be dismissed

at the cost of that appellant, and all his filings before this Court must be disregarded.

This leaves for discussion the issues presented by the appellants, Stallone and Poppler,

which are:

> 1.      Whether or not the Court erred in striking Mr. Stallone's pleadings and awarding a judgment against him.
>
> 2.      Whether or not the Court erred in granting a summary judgment against Claire Poppler.
>
> 3.      Whether or not the award of treble damages is excessive.
>
> 4.      Whether or not the Court should have awarded the Steinwinter prototype truck to Scott Ervin.
>
> 5.      Whether or not the receiver's expenses are outrageous and the award against defendants should be reduced.

### First Issue

### Stallone Pleadings and Judgment Against Him

On November 19, 1993, an order was entered stating:

> Upon Motion of Plaintiff, American Steinwinter Investor Group, for and on behalf of American Steinwinter, Inc., for temporary restraining Order and for good cause shown, it is hereby ORDERED AND DECREED:
>
> 1.      Restrain defendants and each of them as well as their attorneys, agents, or any and all persons in active concert or participation with them who receive notice of this order from taking any action upon, exercising any dominion over, destroying damaging, or removing from the jurisdiction of this Court any ASI assets, intangibles, or other properties, any

recorded information of or concerning ASI investors as contained in any medium, including computer or other electronic data, financial records, and corporate records of ASI, pending hearing and further orders of this Court.

2.      That defendant Stallone be specifically restrained from taking any action upon, exercising any dominion over, destroying, damaging, or removing from the jurisdiction of this court any of the above-referenced items, pending hearing and further orders of this Court.

On December 16, 1993, the Trial Court entered an order reading in part as follows:

It is therefore ORDERED and DECREED that the temporary restraining order issued by this Court on November 19, 1993, be and shall hereby remain in full force and effect.
- - - -
That defendants Stallone and Poppler be and are hereby ordered to produce the records called for in the subpoena issued in conjunction with this temporary injunction hearing, and that same shall be produced for inspection and copying at 1101 17th Avenue South at 1:00 p.m. on December 6, 1993.

On December 21, 1993, the receiver filed an affidavit stating:

4.      On December 19, 1993, I personally observed the loading of a moving van outside the offices of American Steinwinter, Inc.

5.      Items seen loaded onto the van included furniture, computers, electronic equipment, major appliances, and other personalty. The property was then taken to a location at 115 16th Avenue, South in Nashville where it either remains or was further removed to an undetermined location.

On April 12, 1994, the "Plaintiffs" filed the following motion:

This motion is made to compel Mr. Walter Pressley, pursuant to Rule 30 and Rule 34 of the Tennessee Rules of Civil Procedure to produce all paper writings, earlier requested pursuant to deposition and subpoena.

Mr. Pressley testified at deposition that he had documents but did not understand he was to produce them if he thought we already had them. Mr. Pressley later filed a response that the documents are not in his "sole possession." See attached memorandum.

The record does not include "the attached memorandum."

On May 17, 1994, "Plaintiff" filed the following motion:

> This motion is made to compel Mr. Salvatore Stallone, pursuant to Rule 30 and Rule 34 of the Tennessee Rules of Civil Procedure to appear and produce all items included in notices for his deposition.

> Mr. Stallone was noticed for a deposition for May 12, 1994, at 9:30 a.m. That notice required production of certain items in connection therewith. Mr. Stallone failed to attend, failed to produce any of the requested items, all apparently without any valid justification.

On June 14, 1994, the Trial Court entered the following order:

> Upon motion of Plaintiff to compel Mr. Salvatore Stallone to appear and produce all items included in notices for his disposition, and for sanctions, and pursuant to the Local Rule, the Court is of the opinion that the motion should be granted.

> It is hereby ORDERED AND DECREED that Mr. Salvatore Stallone be and is hereby ordered to appear at the offices of Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan on June 16, 1994 at 9:00 a.m. and to produce the items previously identified int he notice of deposition.

> It is further ORDERED AND DECREED that the court reporter's fees of $35.00 and attorneys' fees of $240.00 be and are hereby assessed against defendant Stallone, for which execution may issue if necessary.

On July 8, 1994, the "attorneys for the Defendant" filed the following motion:

> This motion is made for sanction of striking the answer of defendant Stallone, and entering a judgment against defendant Stallone, reserving the amount of monetary damages for determination at a future hearing.

> Defendant Stallone has refused to comply with this court's order for discovery. Therefore, this extreme sanction is warranted.

On July 18, 1994, Stallone filed the following "Objection to Sanctions:"

> Comes William Burton, attorney for Salvatore Stallone and objects to entering a judgment against Mr. Stallone. This extreme action is not warranted at this time.

On August 9, 1994, the Trial Court entered the following order:

> Upon motion of plaintiff for sanction of striking pleadings of defendant Stallone and entering a judgment against defendant Stallone, the court is of the opinion that relief should be granted.
>
> IT IS THEREFORE ORDERED AND DECREED that defendant Stallone shall appear on August 18, 1994, at 9:00 a.m. at the offices of Leitner, Warner, Moffitt, 23rd Floor First American Center, Nashville, Tennessee 37238, and produce all items included on notice for his deposition previously served on defendant's counsel. That upon failure to fully comply, it will be the order of this court to grant Motion for Sanctions, strike the answer of defendant Stallone and enter a judgment against defendant Stallone and enter a judgment against defendant Stallone reserving the amount of monetary damages for determination at a future hearing.

On August 24, 1994, the Trial Court entered the following order:

> Pursuant to this Court's order that upon failure of Defendant Stallone to appear on August 18, 1994, at 9:00 a.m. and produce all items included on Notice for his Deposition which was previously served upon Defendant's counsel, and the Court being advised that Defendant Stallone has failed to appear,
>
> IT IS, THEREFORE ORDERED, and DECREED that Plaintiff's motion for sanction to strike the Pleading of Defendant Stallone and enter a judgment in favor of Plaintiff, American Steinwinter Investor Group against Defendant Stallone be and is hereby granted. The amount of monetary damages is reserved for determination at a future hearing.

On April 2, 1996, Stallone and Poppler filed the following motion:

> Comes Salvatore Stallone and Claire Poppler and move Court for a new trial or to alter or amend the judgments granted on March 29th, 1996, concerning damages against Ms. Poppler and Mr. Stallone, award of fees to David Weed and disposition of the Steinwinter truck. Reasons are set for in the attached memorandum.

The record does not contain an order entered on March 29, 1996.

On April 4, 1996, counsel for Stallone and Poppler filed an affidavit that he had notified opposing counsel of his need to appear in a court in an adjoining county on March 29, 1996, and

that he arrived after the Trial Court had adjourned because of heavy highway traffic and construction.

On April 9, 1996, the Trial Court entered judgment against Stallone and Poppler under the Consumer Protection Act for $1,681,503.00.

TRCP Rule 37 provides in pertinent part as follows:

> **37.01. Motion for Order Compelling Discovery**. - A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:
> - - - -
> (2) MOTION. If a deponent fails to answer a question propounded or submitted under Rule 30 or 31, or a corporation or other entity fails to make a designation under Rule 30.02(6) or 31.01, or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order.
> - - - -
> **37.02. Failure to Comply with Order**. If a deponent; a party; an officer, director, or managing agent of a party; or, a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 or Rule 35, or if a party fails to obey an order entered under Rule 26.06, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A) An order that the matters regarding which the order was make or any other designated facts shall be taken to the established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
> - - - -

-10-

(E) Where a party has failed to comply with an order under Rule 35.01 requiring the party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this rule, unless the party failing to comply shows that he or she is unable to produce such person for examination.

**37.04. Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Requests for Inspection**. - If a party or an officer, director, or managing agent of a party or a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a party fails (1) to appear before the officer who is to take his or her deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of Rule 37.02.

It clearly appears from the record that Stallone was guilty of flagrant disregard of the Rules and Orders of the Court, and that severe sanctions were in order. It also clearly appears from the record that Stallone was guilty of overt refusal to disclose serious breaches of faith of the corporate officers and directors in the misuse and/or abstraction of the contributions of stockholders, and that his persistent resistance to discovery efforts were his means of evading his liability for his misconduct. The sanctions imposed against him by the Trial Court were appropriate and well deserved. The amount of the judgment against Stallone is supported by a preponderance of the evidence. No ground of reversal is presented by appellants first issue.

**Second Issue**

**<u>The Summary Judgment Against Claire Poppler</u>**

**<u>on January 3, 1994</u>**

Although the motion for summary judgment contains no reference to supporting evidence, the record does contain the "Answer and Third Party Complaint," filed by Claire Poppler on July 11, 1994, which includes the following:

1.      Plaintiff American Steinwinter Investors Group is

comprised of six people who have stated that they are for-value investors in ASI. ("ASI"), is a public corporation registered and operated from the State of Utah. Claire Poppler is the President of ASI.

- - - -

Plaintiff Benjamin O. Williams invested $48,013.60 on July 14, 1993, into a Tennessee Corporation Cross Country Tour, touring a new experimental truck built in Germany. After investing into the tour, Plaintiff Williams was apparently given privately owned voting stock registered in the name of (ASI).

- - - -

Plaintiff Mr. Mitchell Breedlove invested $7,484.38 on April 2, 1993, into a Tennessee Corporation. Plaintiff Breedlove invested another $4,531.25 on April 16, 1993, into the same Tennessee Corporation. On June 6, 1993, Plaintiff Breedlove purchased from another Tennessee Corporation the Dealership rights to the State of North Carolina for $145,000.00. The Plaintiff was apparently Given privately owned voting stock registered in the name of ASI.

Plaintiff Mr. David Riddle invested $12,667.00 into a Tennessee Corporation. The Plaintiff was apparently given privately owned voting stock registered in the name of ASI.

Plaintiff Mr. Gregory V. Watson invested $5,000.00 on September 3, 1993, into a Tennessee Corporations Cross County Tour, touring a new experimental truck built in Germany. After investing into the tour, Plaintiff Watson was given free, privately owned stock registered in the name of (ASI).

- - - -

2. ASI's address is not 1103 17th Avenue South, Nashville, Tennessee. The last recorded address was Leightway Drive, Richmond, Kentucky.

- - - -

22. Refers to (ASI) receiving investor funds of $1,500.00. (ASI) never had any investors and therefore (ASI) never received the suggested capital. It is estimated that the total shareholders in (ASI) from 1983/1993 is 514. ASI has no bank accounts and could not possibly have received those funds.

- - - -

Now, assuming the role of a Third Party Plaintiff, Claire Poppler sues the receiver David Weed for the return of her 1990 Jaguar Vanden Plas XJ6 automobile which is in his custody and for the loss of use of her automobile since it

-12-

has been in his custody. That the automobile has a value of $28,000.00. That her loss of use claim equal $200.00 per week.

This vehicle was purchased in June, 1993, at the request of Ms. Poppler as partial payment for her salary and benefits owed to her as an employee of Minestar Corporation and Diversified Leverage Corporation. She began working for Mr. Stallone's companies in June 1992, with a salary of $500.00 per week, plus expenses. She agreed to defer any payment of wages until the companies became more financially sound. In February, 1993, she began working for ASTM, a Tennessee corporation.

The foregoing admissions of Poppler, are competent evidence against her. Her deposition is cited in the brief of counsel, but it is not listed in the certificate of the Trial Clerk or found in the record.

The record contains the deposition of Klaus-Dieter Lemke in which he testified:

Q. Before we break, too, I want you to tell me who all was involved in promoting and getting in the money from the investors and getting the stock certificates out.

A. As far as I understand from -- the main person, the key person to bring in the money was Walter Presley. He had all the contacts and he was the -- he had the personality to -- he was able to do it, to talk to people, to convince them, to make them interested in the project and then he prepared.

He made the proposals, made the negotiations, most of them on phone and all that either they met or they did it on fax, but it was signed by Stallone all the time.

I'm not sure, but I think the principal was that the main stockholders who came in, for instance, Mitch Tate who came in in a very early time, at a very early time, tried to find other persons so worked like a snowball.

One person here and he tries to find another person, then they give the contacts to Walter, and Walter started his job again.

That was the way it went and so in North Carolina in a concentration, around the Shreveport appropriate area, and I knew there was a concentration in Dallas, but I did not know the persons, and there was a concentration around Mitch Tate that I knew. That was how it worked.

-13-

> What we did -- for instance, at the fair or outside on the road and truck stops or wherever it was, if someone was interested, we only gave the business cards or the postcards. We had an address and a contact phone number was on it, and we talked about a truck to the people and told them just think about, if you want something, contact them and they will give you the material, whatever.
>
> But it was really in the hands of doing this -- most of the time in the hands of Walter Presley. He did the main part in doing it and in deciding and bringing in the signature and the contracts. Later Claire did it, too, but she did what he said.

Unless by admissible contradictory evidence, the admissions of Ms. Poppler in her pleading and the testimony of Mr. Lempke justify a summary judgment against Ms. Poppler. Her brief cites various parts of her testimony none of which denies her participation in the solicitation of investments and her knowledge of the wrongful plan to seek the investments.

The deposition of Ms. Poppler contains the following:

> Q. What I'm trying to get to is your involvement with this particular project. And what I think I'm hearing you say is that your involvement was limited basically to sending out these letters, doing clerical work, cleaning the office, under the direction of Mr. Stallone, plus doing transfer stock certificates?
>
> A. Yes.
>
> Q. Is there anything else that you did in this operation?
>
> A. No.
>
> Q. And as president of American Steinwinter of Utah, did you really conduct any active company business or is that just a position that somebody told you, well, now, you're president?
>
> A. The company was inactive so there was no active business to conduct.
>
> Q. What did you do there all day long?
>
> A. Typed, I answered the phone, I cleaned, I went to the bank once in a while, I picked up the mail once in a while.
>
> Q. Then you did go to the bank?

A.   Yes.

Q.   Which bank was that?

A.   I dropped deposits at First American and I believe First Union.

Q.   You said you dropped deposits?

A.   Yes.

Q.   For what company?

A.   American Steinwinter Truck Manufacturing.

Q.   What deposits did you drop at the bank?

A.   Just whatever Mr. Pressley needed dropped.

Q.   Where did you get those deposits?

A.   From Mr. Pressley.

Q.   Where did he get those deposits? I mean what are you talking about, cash deposits?

A.   No, checks.

Q.   Where did the checks come from?

A.   This is kind of stupid, but they came from this thing called "tracing Elvis."

Q.   And that went into American Truck Manufacturing?

A.   No. That would have gone into the truck manufacturing.

Q.   You told me it did a minute ago.

A.   No. I told you I did deposits for Mr. Pressley into the trucking company.

Q.   Exactly.

A.   And then I said the checks I remembered were from "tracing Elvis," but that was a different account. And the banking I did would have been checks signed by Mr. Stallone for cash, for payroll or checks from different accounts into that account.

Although Ms. Poppler 's deposition generally denies solicitation or receipt of funds, it admits specific activities as president of the subject corporation which subject her to liability for knowing participation in the execution of the scheme of Stallone and Pressley.

The foregoing uncontradicted evidence is sufficient as a matter of law to entitle "Plaintiffs," ergo the receiver, to judgment against Poppler as a participant in fraudulent activities in violation of The Consumer Protection Act which authorizes the award of treble damages to the victims of "engaging in any other act or practice which is deceptive to the consumer or any other person" TCA §§ 47-18-104(b) (26); 47-18-109.

## Third Issue

## Excessiveness of Award

It is clear from the evidence that the appellants were willing and knowing participants in an activity which by deception induced a large number of investors to part with a total of $560,501.21 which, it appears, will represent a total loss to them unless there should be a recovery of the judgments and distribution by the receiver.

The amount of the judgment against the appellants is not excessive.

## Fourth Issue

## Release of Truck to Scott Ervin

The model truck was attached and held in the custody of the receiver until December 8, 1995, when the receiver moved the Trial Court for permission to release the truck to Scott Ervin, designer of Steinwinter International Corporation, exhibiting a certificate of title of said corporation.

William Burton, attorney for Salvatore Stallone filed an "Objection to Motion" stating: "In support of the motion is the attached memorandum." The record contains no memorandum or evidence supporting said objection.

No error is found in the authorization to release the truck.

**Fifth Issue**

**<u>Expenses of the Receiver</u>**

The receiver reported receipts of $148,297.48 and disbursements of $138,035.36, leaving $10,262.12 cash on deposit. This report was approved by the Trial Court on April 9, 1996. However, the record contains no evidence that a final adjudication has been made of all issues involving the receivership which is regarded as a proceeding separate and apart from the subjects of this appeal. At any time prior to the entry of a final order terminating the receivership and discharging the receiver, all actions of the Trial Court in relation to the receiver are subject to revision by the Trial Court TRCP Rule 54.02. It would therefore be premature for this Court to review the interlocutory decisions of the Trial Court in respect to the receivership which on remand should be bifurcated under a new separate case number for further proceeding with full opportunity to all interested parties to request revisions and to appeal from the actions of the Trial Court upon such requests.

A casual examination of the reports of the receiver will disclose parts of his reports which should be adequately explained in the record, and if necessary, the approval of some of the expenses included in said reports should be revised.

The judgments against the appellants Stallone and Poppler are affirmed at their cost. The appeal of Walter Pressley is dismissed at his cost. These consolidated causes are remanded to the Trial Court for appropriate further proceedings.

**AFFIRMED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE